# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ATHENS DIVISION

| | |
|---|---|
| CHRISTOPHER WHEAT, | : |
| Plaintiff, | : |
| v. | : Case No. 3:18-cv-00097-CDL-CHW |
| OFFICER J. DAY, *et al.*, | : |
| Defendants. | : Proceedings Under 42 U.S.C. § 1983 |
| | : Before the U.S. Magistrate Judge |

## ORDER AND RECOMMENDATION

Before the Court is a motion for summary judgment filed by Defendants Jeff Day, Wade Harris, Dean Thrasher, and Jonathun Mouton. (Doc. 35). Because Defendants are entitled to qualified immunity from Plaintiff Christopher Wheat's due-process claims, it is **RECOMMENDED** that the motion for summary judgment be **GRANTED** as to that claim. Defendant Day, however, is not entitled to qualified immunity from Plaintiff's excessive-force claim. It is, therefore, **RECOMMENDED** that summary judgment be **DENIED** as to that claim.

Also before the Court is Plaintiff's Rule 56(d) motion for discovery of approximately 11 items, including videotapes, audio recordings, and documents. (Doc. 39). Federal Rule of Civil Procedure 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Plaintiff's general assertion that the requested discovery is "essential in order for Plaintiff to fully rebut[] in response Defendants' motion for summary judgment" is insufficient to satisfy Rule 56(d), *see City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1287 (11th Cir. 2019)

1

("To invoke this Rule, a party 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts' . . . ." (quoting *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir. 1989))), and, in any event, Plaintiff has not produced either an affidavit or declaration that the discovery is necessary to support his opposition to the motion. Plaintiff's Rule 56(d) motion is, therefore, **DENIED**.

## I. BACKGROUND

Plaintiff Christopher Wheat, a pretrial detainee at Walton County Jail at all times relevant to the events at issue in this case, now a state prisoner, raises two types of claims in this § 1983 action. Defendants Jeff Day, Wade Harris, Dean Thrasher, and Jonathun Mouton were all officers of the Walton County Sheriff's Department at all times relevant to Plaintiff's claims.

First, Plaintiff sues Defendant Day for using excessive force, in violation of the Fourteenth Amendment's Due Process Clause, by discharging a taser into Plaintiff's body without justification. Plaintiff contends that he suffers from eczema, which requires him to apply therapeutic shampoo to his skin as needed. (Doc. 1, pp. 8–9). On April 15, 2018, Plaintiff's skin began "scratching and burning" as a result of his skin condition. (*Id.*, p. 9). Plaintiff accordingly asked officers to allow him use of the jail's shower to apply his therapeutic shampoo but was refused. (*Id.*). Upon the refusal, Plaintiff washed himself with water from the sink in his cell, causing flooding. (Docs. 1, p. 9; 1-1, p. 2). Shortly thereafter, at approximately 1:30 a.m., Plaintiff was, by his account, "in [his] room reading [with his] back facing towards the door" when Defendant Day entered the room and shot Plaintiff with a taser. (Doc. 1, p. 9).

Second, Plaintiff sues all four Defendants for due process violations associated with internal disciplinary proceedings. In particular, Plaintiff alleges that he was found guilty of disciplinary charges that he "was never served notification on." (*Id.*, p. 7). Plaintiff also alleges that Defendants wrongfully "tried to coerce" inmate witnesses who wrote statements on Plaintiff's

behalf. (*Id.*). As a result of his convictions, Plaintiff was locked down for 30 days and lost visitation and commissary privileges for 30 days. (Doc. 35-2, p. 22).

In relief, Plaintiff requests compensatory and punitive damages, "whatever [else] the court deems proper," and for "Officer Day to take anger management classes." (*Id.*, p. 8). Following a motion to dismiss, Plaintiff's due-process claim was limited to nominal damages only. (Doc. 28). Compensatory and punitive damages for Plaintiff's excessive-force claim remain available, however. (*Id.*).

## II. SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party; however, "the mere existence of a scintilla of evidence in support of the position will be insufficient." *Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F.3d 1234, 1243 (11th Cir. 2001) (quoting *City of Delray Beach v. Agricultural Ins. Co.*, 85 F.3d 1527, 1530 (11th Cir. 1996)).

The party moving for summary judgment bears the burden of informing the Court of the basis for its motion, and of citing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that support summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In resolving motions for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*,

572 U.S. 650, 657 (2014), which requires the Court to believe the evidence provided by the nonmovant and draw all justifiable inferences in the nonmovant's favor, *Anderson*, 477 U.S. at 255. "Inferences based on speculation," however, "will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (citation and internal quotation omitted). Furthermore, in opposing summary judgment, the nonmoving party may not rest upon mere allegations or denials in the pleadings but instead must "make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## III. QUALIFIED IMMUNITY

Plaintiff has met his burden of showing that Defendant Day is not entitled to qualified immunity from his excessive-force claim, as there is a triable issue remaining as to Day's use of a taser upon Plaintiff. In contrast, qualified immunity, and thus summary judgment, is appropriate as to the due-process claims against Defendants Day, Harris, Thrasher, and Mouton.

### A. **Qualified Immunity Standard**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

To show that the defendants are not entitled to qualified immunity, the plaintiff must present evidence demonstrating (1) "that the official's alleged conduct violated a constitutionally

4

protected right," and (2) "that the right was clearly established at the time of the misconduct." *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016) (citing *Pearson*, 555 U.S. at 232). Both elements must be satisfied to overcome a defense of qualified immunity, *id.* (citing *Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010)), and the Court's analysis of these elements may be conducted in any order, *Pearson*, 555 U.S. at 236.

### B. Discretionary Authority

A threshold matter in deciding whether a defendant is entitled to qualified immunity is whether the defendant has established that "the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citation omitted). "The question is essentially whether the actions 'are of a type that fell within the employee's job responsibilities,'" and is resolved through a two-part inquiry: "'whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.'" *Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)).

Defendants' actions were taken pursuant to and were within the scope of their employment as jail officers at Walton County Sheriff's Office. Defendants' involvement in the disciplinary process at Walton County Jail is both a legitimate job-related function and within their power to perform. Similarly, Defendant Day's actions in restraining Plaintiff in his cell with a taser, although challenged by Plaintiff, were taken in furtherance of a job-related goal, namely, maintaining jail security, and were within his power to perform. Since Defendants have established that they were engaged in discretionary functions during the incidents in question, the burden shifts

to Plaintiff to show that qualified immunity is not appropriate. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

### C. Constitutional Violation

#### 1. Excessive Force

Defendant Day has moved for summary judgment as to Plaintiff's excessive-force claim on two grounds: (1) that Plaintiff's claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), as extended by *Edwards v. Balisok*, 520 U.S. 641 (1997); and (2) that Plaintiff's claim fails under the factors enumerated in *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015). Each will be considered in turn.

##### i. *Heck v. Humphrey*

Under *Heck*, a state prisoner's damages claim is non-cognizable under § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless "the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. The Supreme Court, in *Edwards v. Balisok*, extended *Heck* to cases involving prison disciplinary proceedings, holding that a complaint is non-cognizable under § 1983 if the alleged constitutional violation, if established, would "necessarily imply" the invalidity of disciplinary sanctions that would affect the duration of time to be served, such as the revocation of good-time credits. 520 U.S. at 646. Conversely, when the sanction does not impact the duration of time to be served, *Heck* does not bar the complaint. *See Muhammad v. Close*, 540 U.S. 749, 753–55 (2004) (finding that sanctions, including a 7-day detention and a 30-day denial of privileges, that did not deprive the prisoner of good-time credits did not implicate *Heck*'s bar).

Here, as a result of his convictions for placing an object in his sink that led to flooding and disorderly conduct, Plaintiff, a pretrial detainee at the time, was locked down and lost visitation

and commissary privileges for 30 days. (Doc. 35-2, pp. 21–22). The record does not indicate, and the parties do not contend, that those sanctions impacted the duration of Plaintiff's confinement, for example, by the revocation of good-time credits. The jail's appeal report, completed by Defendant Captain Thrasher, suggested that a loss of 90 days' worth of good-time credits was a potential sanction for the two convictions; however, no such sanction was imposed. (*Id.*, p. 22). Absent any effect on the length of Plaintiff's incarceration, *Heck* does not apply to bar Plaintiff's excessive-force claim. *See Muhammad*, 540 U.S. at 754–55.

      ii.  *Kingsley* Factors

Based on the application of the six *Kingsley* factors to the circumstances of this case, a reasonable jury could find that Defendant Day's use of force against Plaintiff was objectively unreasonable.

When a pretrial detainee alleges that he was subjected to excessive force, the claim is evaluated under the Fourteenth Amendment's Due Process Clause pursuant to a purely objective standard. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2470 (2015). Under that standard, Plaintiff need only show that "the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 2473. The use of excessive force that amounts to punishment violates the Due Process Clause. *Id.* In *Kingsley*, the Supreme Court provided a nonexclusive list of factors that courts should consider in determining the reasonableness of the force used:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* In all cases, the reasonableness determination must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

7

Where, as here, video evidence of the incident in question has been provided, the court may rely upon the video evidence in determining the existence of a genuine issue of material fact. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). The video record of the incident, however, is inconclusive, as it does not show the pertinent moments of the incident–that is, Plaintiff actions preceding Day's use of the taser and the actual discharge of the taser itself–but instead exclusively shows what occurred on the gangway outside of Plaintiff's cell room. The video is also of poor quality, thereby limiting its usefulness. The footage provided by Defendants merely shows five officers approach Plaintiff's cell and, in less than a minute, remove Plaintiff from that cell and escort him out of the area. Therefore, based on the limited events depicted in the video, the video does not "so utterly discredit[]" either party's version of events so that the facts should be viewed "in the light depicted by the videotape." *Id.*

In addition, the chain of events as described by Defendant Day in his incident report and confirmed under oath, *see* (Jeff Day Decl., Doc. 35-1, ¶ 3), are undisputed for purposes of summary judgment. As previously stated, when faced with a properly supported summary judgment motion, the nonmoving party must do more than rest upon his mere allegations and denials. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Rather, to oppose summary judgment, the nonmoving party "must come forward with specific factual evidence sufficient to establish the existence of each element essential to his case on which he will bear the burden at trial." *Coleman v. Miller*, 117 F.3d 527, 529 (11th Cir. 1997) (citing *Celotex*, 477 U.S. at 320).

In his response to the summary judgment motion, Plaintiff challenges the majority of the facts asserted in Defendants' statement of material facts, relying on both his own statements and those provided by other inmates. (Doc. 39-2). The statements Plaintiff cites in support of his position, however, were neither sworn, affirmed, nor made under oath. Unsworn declarations may

serve as sworn declarations for purposes of Rule 56(e),[1] but only when entered under penalty of perjury. *See* 28 U.S.C. § 1746. The fifteen inmate statements in evidence were signed but were undated and included no language that meets the requirements of § 1746.[2] (Doc. 35-2, pp. 28–42). Nor is there any indication that the inmates' oral witness statements to jail officials during the resulting disciplinary proceedings were under oath. In fact, none of Plaintiff's proffered statements or pleadings, including his complaint, were either sworn or made under penalty of perjury. *See Fowler v. S. Bell Tel. & Tel. Co.*, 343 F.2d 150, 154 (5th Cir. 1965) ("[V]erified pleadings may in some circumstances be treated as affidavits [at summary judgment]."). Accordingly, the proffered statements are not evidence that can be properly considered at summary judgment. *See Lelieve v. Oroso*, 846 F. Supp. 2d 1294, 1299 n.2 (S.D. Fla. 2012) (declining to consider at summary judgment a pleading that did not include a declaration that met § 1746's requirements). Plaintiff has, therefore, failed to meet his burden at summary judgment of producing evidence sufficient to dispute Defendants' statement of material facts. *See Coleman*, 117 F.3d at 529. The facts stated therein are thus considered undisputed for purposes of summary judgment.

The undisputed evidence reveals the following chain of events. On April 15, 2018, at approximately 1:30 a.m., Defendant Day responded to reports that Plaintiff, who was housed in the jail's maximum-security dorm on charges of murder, had flooded his cell and had been kicking his cell door, "banging and yelling," and threatening staff.[3] (Doc. 35-1, p. 4). Plaintiff's commotion

---

[1] Rule 56(e) provides, in relevant part: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (2) consider the fact undisputed for purposes of the motion . . . ." Fed. R. Civ. P. 56(e).

[2] A sworn statement under § 1746 should include a statement substantially similar to the following: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. § 1746(2).

[3] Although not properly considered as evidence, some of the inmates' witness statements, upon which Plaintiff relies, in fact support key parts of Day's report. In inmate Brandon Horton's interview, for example, he confirmed that he heard inmates kicking cell doors and that he saw and heard water falling from the rails around the area in which Plaintiff's cell was located. (Interview of Brandon Horton, 01:20–

reportedly caused other inmates to "start a disturbance within the cell block." (*Id.*). Day recalled that Plaintiff had acted similarly on other occasions and that Plaintiff "acted out like this because he did not get what he wanted." (*Id.*). Then, according to Day's report:

> When we entered Cell 12 and went upstairs we saw water coming out of room 30. We went upstairs and I then drew my county issued X26 Taser . . . . I peered briefly into the window and saw Inmate Wheat standing between his desk with [sic] his toilet facing the . . . mirror with his right side facing the door. He also had an unknown object in his hands. Jailer Capell then opened the door and Inmate Wheat turned his back to me and tried to run to his bed. I then fired my taser . . . making a full connection. One probe went into his back right elbow and one in back right thigh area. Inmate Wheat fully locked up, fell striking his bed, and dropping the unknown object. After the 5 second taser cycle was over I instructed Inmate Wheat to roll on his stomach and place his hands behind his back. He complied and D/S Helsper placed him in hand cuffs. D/S Helsper and Jailer Capell assisted Inmate Wheat to his feet and we escorted him to medical. Upon exiting the room D/S Helsper observed a white object in the sink.

(*Id.*). The "unknown object" described in the report has not been identified by Defendants, but Plaintiff contends that it was a book. (Doc. 39-2, p. 6). Once Plaintiff was escorted to the jail's medical department, the attending nurse removed the taser prongs from Plaintiff's body using pliers and cleaned and bandaged his wounds. (Docs. 35-1, pp. 4–5; 35-2, pp. 48–49). The nurse then cleared Plaintiff to return to his cell. (Doc. 35-2, p. 49). In his report, Day explained that he used the taser against Plaintiff "for kicking on the door and flooding his room causing the entire Cell to almost incite a riot." (Doc. 35-1, p. 5).

A reasonable jury, reviewing the above undisputed evidence, could find that Defendant Day's actions violated Plaintiff's constitutional rights. *Fils v. City of Aventura*, 647 F.3d 1272 (11th Cir. 2011), a Fourth Amendment excessive-force case, serves as a useful analogy to the circumstances of the instant case. In *Fils*, Maurice, a plaintiff-appellee, was having a private conversation outside of a billiards club, when Officer Bergert, a police officer attending to a

---

04:10, 05:35–06:00). The flooding was also confirmed by inmate Deangelo Prospere, (Interview of Deangelo Prospere, 01:25–03:20, 05:40–06:10), and inmate Montrez Gordon stated that he saw "water rushing" and heard "people kicking doors," (Interview of Montrez Gordon, 02:00–06:20).

reported disturbance at the club, overheard Maurice use an expletive, in apparent reference to the police presence at the scene. *Id.* at 1288. Bergert, with taser drawn, approached Maurice, who, upon observing the taser, held his hands up and stepped away from Bergert. *Id.* Then, "[w]ithout any verbal warning, Bergert shot his taser into Maurice's chest and delivered an electric shock." *Id.* Although Maurice did not fall to the ground after the initial shock—he claimed that "his knees locked up, and he stood 'frozen'"—"he did not swing his arms or in any other way resist arrest." *Id.* at 1277, 1288. Bergert then "shot his taser probes into Maurice's chest" once more, and, when Maurice eventually fell to the ground, "Bergert put his knee in Maurice's back and grinded his contact taser into the back of Maurice's neck." *Id.* at 1288. The Eleventh Circuit found that Bergert's actions against an unthreatening, unresisting arrestee were excessive, in violation of the Fourth Amendment. *Id.* at 1289.

In light of *Fils*, only one of the *Kingsley* factors—the extent of Plaintiff's injury—weighs in Defendant Day's favor. First, Day's use of the taser was disproportionate to the threat posed by Plaintiff. By all accounts, Day was faced with a detainee that had made no threatening movements towards officers, such as "swing[ing] his arms," *id.* at 1288, and who had not resisted the officers' attempts to restrain him. Once Day was able to observe and evaluate Plaintiff's behavior by "peer[ing] briefly" through the cell's window, what Day saw—Plaintiff "standing between his desk [and] his toilet facing the . . . mirror with his right side facing the door," holding an "unknown object," (Doc. 35-1, p. 4)—does not reasonably suggest that Plaintiff posed a threat significant enough to justify the use of a taser. Although another officer, Deputy Helsper, reported that he "saw Inmate Wheat looking out of his window at all of us walking up the stairs" with "an agitated look on his face and then backed away from his door," (Doc. 35-2, p. 48), Day does not contend that he had made a similar observation or was informed that Plaintiff appeared agitated in response

11

to the officers' presence in the dorm. Also, Plaintiff, like Maurice in *Fils*, moved away from officers as they approached him. Day reported that, upon entry to the room, Plaintiff "turned his back to me and tried to run to his bed. (Doc. 35-1, p. 4). Day does not contend that that action was in any way threatening to his safety. Therefore, the use of a taser on Plaintiff, who was not resisting or threatening the officers on the scene, was a disproportionate response to Plaintiff's conduct at that time.

Second, there is no evidence that Plaintiff sustained anything more than minor injuries—namely, puncture wounds caused by the taser prongs—as a result of Day's use of force. In fact, the video evidence shows Plaintiff walking out of his room and down a staircase without apparent difficultly. In addition, immediately following the incident, Plaintiff was taken to the jail's medical department and assessed by a nurse, who, after treating and bandaging Plaintiff's wounds, discharged him back to his cell. There is no evidence that Plaintiff sustained any permanent damage from his injuries.

Third, Day made no attempt to temper the amount of force used against Plaintiff. According to Day's own report, Day had his taser drawn before he had assessed the potential threat Plaintiff presented, stating that he had drawn his taser and only then "peered briefly" into Plaintiff's cell window. (Doc. 35-1, p. 4). Further, like Bergert, Day, prior to the use of the taser, had not given Plaintiff the opportunity to comply with any commands, for he gave him none. Although, in contrast to *Fils*, only one five-second taser shock was discharged and no further force was used, there is no evidence that Day attempted to use a less-severe method of restraining Plaintiff before resorting to the taser.

As for the final three *Kinglsey* factors, although Defendant Day contends that he was facing a riot-level disturbance, the security problem posed by Plaintiff himself once the door to his cell

was opened by the five officers on the scene and the threat reasonably perceived by Day at that time was, as explained above, minimal. Day does not contend that Plaintiff was actively resisting, and the evidence, in contrast, tends to show that Plaintiff, like Maurice, was moving away from Day. After all, Plaintiff was shot in the *back* of his thigh and elbow.

In sum, all but one of the *Kingsley* factors weighs in favor of a finding that Defendant Day's use of a taser against Plaintiff was unreasonable. Although true that "officers facing disturbances are often forced to make 'split-second judgments' about the need for such force 'in circumstances that are tense, uncertain, and rapidly evolving,'" *Piazza v. Jefferson Cty., Alabama*, 923 F.3d 947, 953 (11th Cir. 2019) (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015)), a reasonable jury could find that Day's actions were excessive and violated Plaintiff's constitutional rights. Just as "unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions" violates the Fourth Amendment, *see Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011), the use of a taser against an unresisting, unthreatening pretrial detainee who has not disobeyed officers' commands violates the Fourteenth Amendment, *see Piazza*, 923 F.3d at 953 ("Once a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need." (emphasis omitted) (internal quotation omitted)). As a final note, Day's explanation for the use of force is telling, as it suggests that the force was used to punish Plaintiff, rather than for immediate safety reasons or to maintain institutional security: "We tased Inmate Wheat for kicking on the door and flooding his room causing the entire Cell to almost incite a riot." (Doc. 35-1, p. 5); *see Kingsley*, 135 S.Ct. at 2475 ("[P]retrial detainees (unlike convicted prisoners) cannot be punished . . . .").

### D. Clearly Established Law

A reasonable officer in Defendant Day's position would have been on notice that his

actions in tasing Plaintiff, an unresisting pretrial detainee, were unlawful. An official's conduct violates clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). For a right to be clearly established, "the binding precedent set forth in the decisions of the Supreme Court, the Eleventh Circuit, or the highest court of the state (Georgia, here)," *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016), should "either establish[] a broad, applicable principle of law or ha[ve] materially similar facts such that it would put [the official] on notice that his actions were unlawful," *Galvez v. Bruce*, 552 F.3d 1238, 1244 (11th Cir. 2008).

By April 15, 2018, the day on which the events in this case took place, it was clearly established in this Circuit that a government official's use of force against an unresisting detainee is unlawful. *See Fils v. City of Aventura*, 647 F.3d 1272, 1292 (11th Cir. 2011) ("Bergert and Williams should have known that their conduct violated Maurice's Fourth Amendment rights. Maurice was tased even though he committed at most a minor offense; he did not resist arrest; he did not threaten anyone; and he did not disobey any instructions (for none were given)."); *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) ("Once a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need."); *Vinyard v. Wilson*, 311 F.3d 1340, 1348–49 (11th Cir. 2002) (finding that the use of pepper spray on an unresisting suspect was unlawful); *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002) ("By 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued or, as in this case, incapacitated." (citing *Harris v. Chapman*, 97 F.3d 499, 505–06 (11th Cir. 1996); *Davis v. Locke*, 936 F.2d 1208, 1212–13 (11th

14

Cir. 1991); *Williams v. Cash–C.O.I.*, 836 F.2d 1318, 1320 (1988); and *Perry v. Thompson*, 786 F.2d 1093 (11th Cir. 1986))); *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991) ("The basic legal principle is that once the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth and Fourteenth Amendments, and any abuse directed at the prisoner after he terminates his resistance to authority is an Eighth Amendment violation."); *Ort v. White*, 813 F.2d 318, 327 (11th Cir. 1987) ("A fourteenth amendment violation occurs in this context where prison officers continue to employ force or other coercive measures after the necessity for such coercive action has ceased.").

Even if precedent did not clearly establish the right at issue in this case, Day's conduct would fall under the "obvious clarity" exception, which "applies in situations where the official's conduct so obviously violates the constitution that prior case law is unnecessary." *Melton*, 841 F.3d at 1221 (internal quotation omitted) (citing *Gilmore v. Hodges*, 738 F.3d 266, 279 (11th Cir. 2013)). Plaintiff "showed no hostility to [Day], did not disobey any orders, and did not make any menacing gestures," *Fils*, 647 F.3d at 1292, yet Day tased Plaintiff, causing Plaintiff to "fully lock[] up" and fall, "striking his bed," (Doc. 35-1, p. 4). Day's actions "were clearly wrong." *Fils*, 647 F.3d at 1292.

Therefore, in light of this Circuit's precedent and the obviousness of the violation, Defendant Day would have had fair warning at the time that tasing an unresisting detainee was unlawful. Since a reasonable jury could find that Day's conduct violated clearly established law, Day is not entitled to qualified immunity from Plaintiff's Fourteenth Amendment excessive-force claim.

### 2. Due Process

Plaintiff has not shown that the process afforded to him prior to his placement into

disciplinary segregation was constitutionally inadequate. Plaintiff, as a pretrial detainee, was entitled to a hearing before disciplinary sanctions were imposed. *See Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1348 (11th Cir. 2016) ("[A] pretrial detainee is entitled to a due process hearing before being subjected to 'conditions [that] amount to punishment.'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979))). It is undisputed that Plaintiff received a hearing prior to the imposition of those sanctions. The question then becomes whether the hearing was conducted in accordance with due process.

To satisfy due process, jail officials must provide the detainee with the following protections before imposing punishment:

> (1) advance written notice of the charges; (2) a written statement of the reasons for the disciplinary action taken; . . . (3) the opportunity to call witnesses and present evidence 'when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals'[; and (4) a sufficiently impartial hearing board].

*Id.* at 1350 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 564–66, 571 (1974)). The process afforded to Plaintiff satisfied those constitutional protections.

First, Plaintiff had advance notice of the charges of which he was ultimately convicted. Plaintiff's primary contention is that he was found guilty of charges of which he was not given advance notice. Following the April 15, 2018 incident, Plaintiff was charged with placing a foreign object in his sink, disorderly conduct, and creating, encouraging, or inciting a riot. (SMF, Doc. 35-4, ¶ 34). It is undisputed that Plaintiff was provided with advance written notice of those charges. (*Id.*, ¶ 35). Following a hearing, however, Plaintiff was found guilty of not only the aforementioned charges, but also of providing false information to officers, repeated minor violations, and beating on doors. (*Id.*, ¶ 41). Advance written notice of these new charges was not provided. Ordinarily, the imposition of punishment on a pretrial detainee without such notice violates due process. *See Jacoby*, 835 F.3d at 1350. Here, however, Defendant Captain Thrasher, recognizing the potential

due-process violations presented by the new charges, dismissed those charges on appeal before disciplinary action was taken. (*Id.*, ¶ 46). Captain Thrasher also dismissed the charge of inciting a riot, finding that "there is [not] enough evidence in the reports to warrant the charge." (Docs. 35-2, p. 21; 35-4, ¶ 45). Plaintiff was, therefore, convicted and punished based on two of the three original charges only, of which it is undisputed that Plaintiff had advance written notice.

Plaintiff also received the three other enumerated constitutional protections. It is undisputed that Plaintiff was provided written statements of the reasons for the sanctions. (Doc. 35-2, pp. 9, 21–22). Plaintiff was also given the opportunity to present evidence at the hearing. In fact, Plaintiff presented to the officials presiding over the hearing fifteen statements from other inmates at the jail who allegedly witnessed the incident. (Docs. 35-2, pp. 28–42; 39-4); (Hearing Audio, 30:00–31:30). Officials then interviewed six of those inmates. Finally, there is no evidence that the hearing board was not sufficiently impartial. None of the recorded witness interviews indicate any attempt by officials to coerce the interviewees or, indeed, any bias on the officials' part. Plaintiff has presented three additional inmate statements that suggest coercion during the interviews, (Docs. 39-4, 39-5, 39-6); however, the statements were not made under penalty of perjury and are therefore not evidence. *See Lelieve v. Oroso*, 846 F. Supp. 2d 1294, 1299 n.2 (S.D. Fla. 2012). There is also no evidence that any of the officers' statements, on which the hearing officers primarily relied, were based on false information.

In sum, Plaintiff received a comprehensive and fair review of the charges against him. The one potential due-process violation that resulted from the hearing was quickly rectified by officials and was thus harmless. Therefore, since Plaintiff received due process before disciplinary action was taken against him, Defendants are entitled to summary judgment on the issue. Because Defendants did not violate Plaintiff's constitutional rights, they necessarily have not violated

clearly established law. *See Melton v. Abston*, 841 F.3d 1207, 1225 (11th Cir. 2016).

## CONCLUSION

Defendants are entitled to qualified immunity from Plaintiff's due process claims only. Accordingly, it is **RECOMMENDED** that Defendants' motion for summary judgment (Doc. 35) be **GRANTED** as to that claim. As for Plaintiff's excessive force claim against Defendant Day, it is **RECOMMENDED** that summary judgment be **DENIED**, and that the claim proceed to trial for compensatory and punitive damages and other proper relief. *See* (Doc. 28).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, <u>WITHIN FOURTEEN (14) DAYS</u> after being served with a copy thereof. The District Judge will make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED AND RECOMMENDED**, this 1st day of July, 2020.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge