IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER WHEAT, | : | |
|     Plaintiff, | | CIVIL ACTION NO. |
| | : | |
| vs. | | 3:18-CV-0097-CDL-CHW |
| | : | |
| DEAN THRASHER, et al., | | |
|     Defendants. | : | |

**DEFENDANT DAY'S OBJECTION TO THE REPORT AND
RECOMMENDATION TO DENY HIS SUMMARY JUDGMENT MOTION**

COMES NOW Defendant JEFF DAY in the above-styled action files this OBJECTION to the Magistrate Judge's recommendation (Doc. 52) to deny his Motion for Summary Judgment:

**FACTUAL OVERVIEW**

**BACKGROUND**

Plaintiff Christopher Wheat was an inmate in the Walton County Jail and charged with two murders, aggravated assault, and other serious charges. Stamey Declaration at Exhibit A. At his book-in, Inmate Wheat was 5 foot 11 inches tall and weighed 210 pounds. At the time of this incident Inmate Wheat was approximately 38 years old. Stamey Declaration at Exhibit A (born in 1985).

At approximately 1:30 a.m. on April 15, 2018, Plaintiff was in a cell in the jail's maximum security cell block. Declaration of Jeff Day at ¶4 & Exhibt A (report) at ¶1. He wanted to take a shower. Doc. 1 (Complaint) at 6-7. It was after midnight, the cell block

was locked down, and an officer denied Plaintiff's request to take a shower. Doc. 1 (Complaint) at 6-7; Stamey Declaration at Ex. B – Disciplinary – 43 (Helsper Report).

### PLAINTIFF'S THREATS, EXCESSIVE NOISE AND CELL FLOODING

Plaintiff told the officer who denied him the shower "You're going to deal with me all night." Stamey Declaration at Ex. B – Disciplinary – 49 (Branch Report). Plaintiff threatened "You're going to regret this," and added "it's on now." Stamey Declaration at Ex. B – Disciplinary – 49 (Branch Report).

After that, Plaintiff continually banged, yelled and kicked the door in his cell. Stamey Declaration at Ex. B – Disciplinary – 49 (Branch Report); Day Declaration at Report ¶1. Plaintiff's continual noise awakened and incited other inmates, since it was after 1:00 a.m. Day Declaration at Report ¶¶1-2. The disruption drew the attention of officers, who called for backup. Stamey Declaration at Ex. B – Disciplinary – 49 (Branch Report).

Then a night cleaner informed officers that room 30 (Wheat's cell) had lots of water flowing from under the cell door. Stamey Declaration at Ex. B – Disciplinary – 49 (Branch Report). Officers turned on the lights and observed water pouring from Wheat's second-tier cell onto the bottom floor. Stamey Declaration at Ex. B – Disciplinary – 49 (Branch Report). Plaintiff had overflowed the sink in his cell, causing water to flow beneath his cell door into the cell block. Day Declaration at Report ¶¶1-2.

Whether due to Wheat's water or Wheat's noise, or both, other inmates began to

2

scream and bang on cell doors. Stamey Declaration at Ex. B – Disciplinary – 49 (Branch Report); Day Declaration at Report ¶1.

## DEPUTY DAY'S RESPONSE

Deputy Jeff Day and other officers heard the commotion and prepared to respond to the situation. Day Declaration at Report ¶1. Deputy Day learned that Plaintiff previously told an officer who denied him the shower "You're going to regret this" and "You re going to deal with me all night." Day Declaration at Report ¶1. Deputy Day regarded these statements as threats. Day Declaration at Report ¶1. Deputy Day called for three other officers to assist in removing Inmate Wheat and place him in a holding cell. Day Declaration at Report ¶2.

Deputy Day knew from past incidents with Inmate Wheat that talking with him was unlikely to resolve the situation. Day Declaration at Report ¶1. On previous occasions Inmate Wheat had caused similar disturbances. *Id.* Aside from Wheat's specific misconduct in his own cell, the disturbance was causing numerous inmates to scream and yell and bang in the cell block, and Deputy Day viewed the situation as an emergency. Day Declaration at Report ¶2.

## TASER INCIDENT

Deputy Day and other officers entered the cell block, went to Plaintiff's cell and saw water coming from under the cell door. Day Declaration at Report ¶2. Deputy Day drew his Taser. Day Declaration at Report ¶2. Deputy Day looked into the cell window

3

and saw Inmate Wheat standing with his right side facing the door and an unknown object in his hand. Day Declaration at Report ¶2. The cell door was opened, after which Inmate Wheat quickly moved toward the bunk. Day Declaration at Report ¶2.

Deputy Day fired his Taser. Day Declaration at Report ¶2. The Taser prongs hit Plaintiff's back right elbow and back right thigh. Day Declaration at Report ¶2. Inmate Wheat fell onto the bed and dropped the object from his hand. Day Declaration at Report ¶2. Officers then handcuffed Inmate Wheat. Day Declaration at Report ¶2.

Officers got Inmate Wheat to his feet and took him to the medical area, where the nurse removed the Taser probes and treated the puncture wounds from the Taser probes. Stamey Declaration at Ex. B – Disciplinary – 43. The nurse told officers that Inmate Wheat did not need further medical treatment. Stamey Declaration at Ex. B – Disciplinary – 44. There is no evidence of injury beyond the puncture wounds from the Taser probes. Stamey Declaration at Ex. B – Disciplinary – 43-44; Jail Video (showing Plaintiff walking normally after the incident).

For the reasons discussed below, qualified immunity shields Deputy Day from Plaintiff's excessive force claim. Therefore, the Recommendation should be rejected as to the claim against Defendant Day.

## ARGUMENTS AND AUTHORITIES

### I. PLAINTIFF CANNOT SUSTAIN AN EXCESSIVE FORCE CLAIM AGAINST DEFENDANT DAY

Plaintiff asserts an excessive force claim based on Deputy Day's use of a Taser.

4

This action is governed by the objective reasonableness standard detailed in Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015), which accounts for the following non-exclusive factors:

> [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting.

Kingsley, 135 S. Ct. at 2473.

The objective reasonableness determination must be made "from the perspective of a reasonable officer on the scene," and it must account for the legitimate interests of the institution by "appropriately deferring to 'policies and practices that in th[e] judgment' of … officials 'are needed to preserve internal order and discipline and to maintain institutional security.' " *Id.* (quoting Bell v. Wolfish, 441 U.S. 520, 540, 547, 99 S.Ct. 1861 (1979)). The absence of imminent danger does not automatically make the use of force unconstitutional, because jail officers can properly use force preemptively to maintain security. See Whitley v. Albers, 475 U.S. 312, 322, 106 S.Ct. 1078 (1986) (the deference afforded to prison guards applies not only to measures taken in response to actual imminent danger, but also to "prophylactic or preventive measures," which are undertaken to avoid such dangers and maintain institutional discipline).

As discussed below, application of the principles detailed above leads to the conclusion that Defendant Day's use of the Taser was not excessive. *Cf.* Draper v.

5

Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) (observing that "being struck with a taser gun is an unpleasant experience" but concluding that "a single use of the taser gun causing a one-time shocking ... was reasonably proportionate to the need for force and did not inflict any serious injury" where officers used Taser on unrestrained, uncooperative, and belligerent suspect in a traffic stop).

### 1. Use of Force Was Proportional to the Situation

Given the serious circumstances attending Plaintiff's post-midnight disturbance, some force was justified in this incident. Plaintiff threatened officers, banged on the cell door and then flooded his cell, in the middle of the night in a maximum security wing of the jail.

Aside from Plaintiff's established disruption and cell-flooding, Deputy Day was aware of Plaintiff's previous disturbances. In those cases talking had not resolved the situation. Deputy Day also was aware of Plaintiff's threats that night. Finally, Deputy Day was aware that Plaintiff was charged with murder and this was the maximum security cell block.

Under the circumstances, Deputy Day was entitled to conclude that he was dealing with a large, threatening, unreasoning, unrestrained, murder suspect in a cell flooded with water. The Eleventh Circuit has upheld use of Tasers in far less serious circumstances.[1]

---

[1] Hoyt v. Cooks, 672 F.3d 972 (11th Cir.2012) (granting qualified immunity to officers who repeatedly used Taser to subdue mentally deranged suspect); Zivojinovich v. Barner, 525 F.3d 1059, 1073 (11th Cir.2008) ("use of a taser gun to subdue a suspect who has repeatedly ignored police instructions and continues to act belligerently toward police is not excessive force."); Chaney v. City of Orlando, FL, 291 Fed.Appx. 238, 244 (11th

Likewise, the Eighth Circuit granted qualified immunity where an officer used a Taser twice on a woman who simply refused to changed into jail clothes. Hollingsworth v. City of St. Ann, 800 F.3d 985, 990 (8th Cir. 2015).

### 2. Plaintiff Did Not Sustain Substantial Injury

The jail video reflects Plaintiff walking normally from his cell after the incident, and there is no allegation of injury beyond use of the Taser. An excessive force claim requires Plaintiff to "offer some evidence of injury beyond a minimal one." Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990). The record here reflects that Plaintiff was not injured by the Taser, except to the extent of puncture wounds from the Taser probes. See Riggins v. Beseler, 568 F. App'x 850, 853 (11th Cir. 2014); Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir.1994) (*de minimis* injury can serve as conclusive evidence that *de minimis* force was used), *cert. denied,* 115 S.Ct. 909 (1995). The Eleventh and Eighth Circuits have held that a single Taser use falls into the *de minimis* use of force category. Bien-Aime v. Vice, 624 F. App'x 726, 727–28 (11th Cir. 2015) (finding that Taser use on restrained female was de minimis force); Hollingsworth v. City of St. Ann, 800 F.3d 985, 990 (8th Cir. 2015). Because there was no serious injury, this factor favors a finding of

---

Cir 2008) (granting immunity to officer who physically grabbed detainee, pulled him out of his car, threw him to the pavement, handcuffed him, used his Taser on arrestee's back, and put his foot on arrestee's head); Buckley v. Haddock, 292 Fed.Appx. 791, 796 (11th Cir. 2008) (finding no constitutional violation where officer used Taser three times on handcuffed detainee who offered only passive resistance to arrest during a traffic stop); Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004) (upholding use of Taser on belligerent, noncompliant suspect, even in absence of flight or aggression); Pierre v. Gruler, 2009 WL 383352, 7 (M.D.Fla.2009) (dismissing Taser excessive force claim where motorist resisted traffic stop and arrest).

7

reasonable force.

### 3. Use of Force Was Limited to a Single Taser Deployment

Under Circuit case law, efforts to temper the severity of force may include "ceasing the use of force once a detainee has been subdued" and "post injury efforts to ameliorate the effects of force used, such as immediately summoning medical assistance." Johnson v. McLaughlin, 5:13-CV-366 MTT, 2014 WL 7662517, at *7 (M.D. Ga. Dec. 9, 2014), *report and recommendation adopted in part,* 5:13-CV-366 MTT, 2015 WL 269134 (M.D. Ga. 2015) (citing Cockrell, 510 F.3d at 1312).

Here, after a single Taser deployment Plaintiff was handcuffed and taken to the medical staff. Aside from that, a Taser involves far less force than a hands-on fight in a small, flooded jail cell with a large, agitated murder suspect. Therefore, this factor supports that Deputy Day did not use excessive force.

### 4. Plaintiff Created a Serious Security Problem

There is no question that officers "may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir.1990). In this case, Plaintiff threatened officers, flooded his cell, and took pains to create a broad inmate disturbance in the middle of the night in the Detention Center's maximum security dormitory. Plaintiff created an unpredictable, dangerous situation, and officers were entitled to use reasonable force to bring the situation under control.

### 5. Deputy Day Reasonably Perceived Plaintiff as a Serious Threat

Plaintiff was a belligerent, 210-pound, unrestrained murder suspect who had threatened officers and clearly was agitated. Every reasonable officer would view Plaintiff as threatening under these circumstances.

### 6. Plaintiff Was Actively Resisting

When Deputy Day reached the cell, Plaintiff had been defying officers for the duration of the incident. He had threatened officers. He flooded his cell. Plaintiff appeared in a fighting stance with an object in his hand—he appeared ready for a fight. When the cell door opened Plaintiff made a sudden movement, and Deputy Day used the Taser. The Taser brought Plaintiff's resistance to an end without anyone getting hurt.

In sum, the record demonstrates that Plaintiff instigated this altercation, Deputy Day responded reasonably under the circumstances, and Plaintiff did not suffer more than a *de minimis* injury. The *Recommendation* errs in its excessive force analysis, because Deputy Day's single use of the Taser did not violate the Fourth Amendment under these circumstances.

## II.  QUALIFIED IMMUNITY PROTECTS DEFENDANT DAY

The *Recommendation* errs in finding that Deputy Day is not entitled to qualified immunity. Initially, there is no dispute that Defendant Day acted within his discretionary authority for purposes of the qualified immunity doctrine. Therefore, to defeat Defendant's qualified immunity, "the burden is on the plaintiff to show that, when

[Defendant] acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993).

### A. Qualified Immunity Standards

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.' " *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 2085 (2011).

Before qualified immunity is denied, "existing precedent must have placed the statutory or constitutional question **beyond debate**." Kisela v. Hughes, 138 S. Ct. 1148, 1152–53 (2018) (emphasis supplied; quoting White, 580 U.S., at ——, 137 S.Ct., at 551). The Supreme Court "repeatedly [has] told courts ... not to define clearly established law at a high level of generality." Plumhoff v. Rickard, 572 U.S. 765, 779, 134 S. Ct. 2012, 2023 (2014).

> The qualified immunity inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. An official's awareness of an abstract right does not equate to knowledge that his conduct may infringe that right.

*Gilmore v. Hodges*, 738 F.3d 266, 278 (11th Cir.2013) (citations omitted).

"[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." Mullenix v. Luna, 136 S.Ct. 305, 308(2015) (*per curiam*) (internal quotation

marks omitted).

> Use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. [Mullenix,]136 S.Ct., at 309 (internal quotation marks omitted and emphasis deleted).

Kisela v. Hughes, 138 S. Ct. at 1153.

In regard to Plaintiff's Taser claim against Deputy Day, qualified immunity is the norm unless the issue is settled in Plaintiff's favor "beyond debate."

> "Because excessive-force claims are inherently fact specific, 'generally no bright line exists for identifying when force is excessive; we have therefore concluded that unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity.' Priester, 208 F.3d at 926. Put differently, '[c]oncrete facts are generally necessary to provide an officer with notice of the hazy border between excessive and acceptable force.' " Fils v. City of Aventura, 647 F.3d 1272, 1291 (11th Cir. 2011) (internal quotation marks omitted).

Johnson v. Conway, 688 F. App'x 700, 706 (11th Cir. 2017).

**B. Application of the Standards**

Here, Plaintiff's misconduct plainly justified use of force, the use of force was minimal, Plaintiff had no more than *de minimis* injury and Defendant Day merely responded to Plaintiff's serious disturbance by bringing it to a swift end. This was not a violation of clearly established law. See Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078 (1986); Bennett v. Parker, 898 F.2d 1530 (11th Cir. 1990) (holding that decisions made at the scene of a disturbance to restore order are entitled to deference by the courts). Because there is no binding decision that holds Deputy Day's use of a Taser

illegal in as situation like this, qualified immunity bars Plaintiff's claim. Defendant Day did not violate clearly established law. Accordingly, the *Recommendation* should be overruled.

### C. The *Recommendation*'s Qualified Immunity Analysis Errs

The *Recommendation* erroneously views the Taser incident here as so similar to the incident involving plaintiff Maurice in Fils v. City of Aventura, 647 F.3d 1272 (11th Cir.2011), that qualified immunity does not apply. In Fils, plaintiff Maurice's story was that police confronted a calm "crowd outside [a] club ... . Maurice had his back turned to the ... police officers...." Maurice stated to another bystander in a normal tone of voice " 'they're overreacting, these motherf---ers are overreacting.' " *Id.* at 1288.

Then an officer "walked up to Maurice's back and said, 'what you said, motherf---er?,' and pulled out his taser. Maurice turned around, saw [the] weapon, put his hands up, and took one step backward." *Id*. "Without any verbal warning, [the officer] shot his taser into Maurice's chest and delivered an electric shock." *Id.*

> Maurice did not fall down following [the] initial tasing, but he did not swing his arms or in any other way resist arrest. Nonetheless, [a second officer] shot his taser probes into Maurice's chest. And, after finally falling to the ground, [the first officer] put his knee in Maurice's back and grinded his contact taser into the back of Maurice's neck" while swearing at him.

*Id.* at 1288. Maurice was charged with resisting arrest without force and disorderly conduct; eventually charges were dropped. *Id.* at 1279.

In denying qualified immunity on Maurice's excessive force claim, the Eleventh Circuit found it significant that Maurice was minding his own business, did not threaten anyone or participate in a disturbance, did not disobey a command, put up his hands and stepped back from an officer who pointed his Taser, and then did not resist arrest in any manner. *Id.* at 1288. Nevertheless, officers used Tasers on Maurice three separate times. *Fils* viewed this as gratuitous force against a non-threatening, non-resisting person who at most committed a trivial offense. *Id.* at 1289.

It should be abundantly obvious that the only parallel between *Fils* and the present case is that both involved an officer using a Taser. This case happened in a jail. In contrast to Maurice, here Plaintiff was the *cause* of a chaotic incident. Plaintiff was a large murder suspect. He threatened officers, banged on his cell, and flooded his cell, all in the middle of the night in a maximum security cell block. He was actively disobeying numerous jail rules when the Taser was fired. There was a strong need to bring the situation under control, and the Taser was used only once in direct response to Plaintiff's misconduct.

Fils is simply a very different case, and it did not tell Deputy Day that he would violate the Fourth Amendment by using the Taser in this jail incident. "Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." Adams v. St. Lucie Cnty. Sheriff's Dep't, 962 F.2d 1563, 1575 (11th Cir.1992). At any rate, Fils does not settle the issue in Plaintiff's favor "beyond debate," so qualified immunity applies.

Last, the *Recommendation* also asserts that this is an "obvious clarity" case where no precedent is required to deny qualified immunity. Respectfully, the *Recommendation* got that wrong too.

"Obvious clarity cases" are "rare." Coffin v. Brandau, 642 F.3d 999, 1015 (11th Cir.2011) (citations and quotation marks omitted). For this "narrow exception" to defeat immunity, the officer's acts had to have been "so egregious that preexisting, fact-specific precedent was not necessary to give clear warning to every reasonable ... officer that what the defendant officer was doing must be 'unreasonable' within the meaning of the Fourth Amendment." *Id.* (citations and quotation marks omitted).

"One indication that this is not a matter of obvious clarity are the decisions from other courts throughout the country concluding that no Fourth Amendment violation occurred in circumstances very similar to those facing the [officer] in this case." Coffin, 642 F.3d at 1016. The following cases all held that using an electric device against an unrestrained, agitated inmate who caused a disturbance did not violate the federal constitution. Jasper v. Thalacker, 999 F.2d 353, 354 (8th Cir.1993) (holding that using stun gun to subdue an unruly inmate who threatened officers did not violate Eighth Amendment); Caldwell v. Moore, 968 F.2d 595, 602 (6th Cir.1992) (finding no violation in officers' use of stun gun against inmate who repeatedly kicked cell door); Alford v. Osei-Kwasi, 203 Ga. App. 716, 716, 418 S.E.2d 79, 82 (1992) (finding no Eighth Amendment violation where officer used Taser on pregnant inmate who continually kicked jail cell door). These cases are far closer to the present case than Fils, and they run

14

contrary to the *Recommendation*'s holding. Consequently, this must not be an "obvious clarity" case, since roughly nine appellate judges (those who considered Jasper, Caldwell and Alford) found no constitutional deficiency in cases with similar facts. Qualified immunity applies.

## CONCLUSION

In light of the qualified immunity doctrine, the Court should dismiss Plaintiff's claim against Defendant Bell. The *Recommendation* should be rejected in regard to Defendant Day.

Respectfully submitted,

Williams, Morris & Waymire, LLC

/s/ Jason Waymire
Jason C. Waymire
Georgia Bar No. 742602
Attorney for Defendant Day

Bldg. 400, Suite A
4330 South Lee Street
Buford, Georgia 30518
678-541-0790
678-541-0789
jason@wmwlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the within and foregoing **OBJECTION** to Plaintiff by depositing a true copy in the United States Mail, proper postage prepaid, addressed as follows:

CHRISTOPHER WHEAT
GDC 1148575
WASHINGTON STATE PRISON
PO BOX 206
DAVISBORO, GA 31018

This July 15, 2020.

                                   Williams, Morris & Waymire, LLC

                                   /s/ Jason Waymire
                                   Attorney for Defendant Day